UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
IN RE:

    JOHN BERRY                                   CASE NO. 04-64413
    d/b/a BERRY FARMS

                              Debtor               Chapter 12
--------------------------------------------------------
APPEARANCES:

TREVETT, LENWEAVER & SALZER, P.C.      DAVID H. EALY, ESQ.
Attorneys for Debtor                            Of Counsel
Two State Street
Suite 1000
Rochester, NY 14614

MELVIN & MELVIN, PLLC                    LOUIS LEVINE, ESQ.
Attorneys for Duane Allen and Gary Allen      Of Counsel
217 South Salina Street, Suite 700
Syracuse, New York 13202

Hon. Stephen D. Gerling, Chief U.S. Bankruptcy Judge

**MEMORANDUM-DECISION, FINDINGS OF FACT,
CONCLUSIONS OF LAW AND ORDER**

       The Court has under consideration a motion filed on June 16, 2005, by John R. Berry ("Debtor") seeking to reject a "purported" executory contract with Duane and Gary Allen (the "Allens") pursuant to § 365(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330 ("Code"). In addition, the Debtor asks that the proof of claim filed by the Allens be expunged and that the Court cancel an undertaking posted with the Cayuga County Treasurer pursuant to a Memorandum Decision and Order of the Hon. Peter E. Corning, Acting Justice of the New York State Supreme Court, Cayuga County, New York ("State Court"), dated May 2002 ("2002 State Court Decision"). *See* Exhibit B of Debtor's Motion. Opposition to the motion was filed

                                                                                               2

by the Allens on July 6, 2005.

The motion was originally heard by the Court on July 19, 2005, at its regular motion term in Syracuse, New York. The motion was adjourned to the Court's Binghamton motion calendar on September 8, 2005. Following further oral argument, the Court took the matter under submission on that date.

### JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1) and (b)(2)(M) and (O).

### FACTS

The Debtor filed a voluntary petition pursuant to chapter 13 of the Code on June 18, 2004. On December 9, 2004, the Debtor filed a motion to convert the case to one under chapter 12 of the Code. On January 19, 2005, the Court signed an Order granting the Debtor's motion. On May 27, 2005, the chapter 12 trustee filed a motion to dismiss the case based on the Debtor's failure to file a chapter 12 plan. That motion was settled with a conditional order signed on June 20, 2005. In the interim, the Debtor filed the motion presently under consideration.

The current motion *sub judice* concerns an agreement executed on May 17, 2001 ("May 17th writing") between the Debtor and the Allens for the purchase of real property owned by the Debtor and located in Scipio Center, New York, commonly known as "Minde Farm." According

3

to the Debtor, the property consists of approximately 143.2 acres of vacant farm land and a barn.

The writing memorializing the transaction indicates that the Allens were to start using the property beginning on May 17, 2001. It goes on to state:

> [t]he purchase price for this land is $225,000. A purchase offer will be presented to the seller as soon as possible. A $5,000 deposit has been made within [sic] this agreement. The remainder of the purchase price is to be paid at Closing. All taxes will be adjusted at the time of closing. The buyers shall receive a clear title. The Closing date shall be before August 1, 2001.
>
> This shall be a binding agreement when signed by all parties.

*See* Exhibit A of Debtor's Motion.

After execution of the May 17th writing, a purchase offer was submitted to the Debtor on or about July 15, 2001, by the Allens. Allegedly, Debtor's counsel responded by letter dated July 31, 2002, interposing what the Allens contend were additional terms and conditions. Subsequent correspondence between the parties' attorneys apparently ensued without any closing occurring in 2001. *See* Exhibits B, D, E, F and G, attached to Debtor's Affidavit, sworn to June 13, 2005. On March 8, 2002, the Allens commenced an action for specific performance, or in the alternative, for money damages, against the Debtor in State Court. On May 9, 2002, the Debtor sought by Order to Show Cause to enjoin the Allens from "exercising possession or control over the farm which is the subject of this dispute." *See* 2002 State Court Decision.

Justice Corning in considering the Debtor's request for an injunction made the following factual findings:

1. A purchase offer was submitted to the Debtor on July 15, 2001, which was rejected "due to additional terms which were contained in the offer."

2. A second offer was presented on August 22, 2001, which was also rejected, as was a purchase offer presented by the Allens on September 5, 2001.

3.      In addition to rejecting the offer of September 5, 2001, the Debtor returned the deposit check to the Allens.

*Id.*

In considering the Debtor's request for an injunction, Justice Corning determined that the May 17th writing lacked material terms and could not be "construed as a binding enforceable contract" and concluded that it was not a valid contract. *Id.* The State Court granted the Debtor's motion for an injunction with the proviso that the Allens be allowed access to the twenty acres of wheat that they had already planted on the subject property, as well as access to their property located in the barn. The State Court also required that the Debtor post an undertaking of $2,500 in the event that the injunctive relief was not properly granted. *Id.*

On November 14, 2002, the Hon. Dennis Kehoe, also Justice of the same State Court, signed an Order denying the Debtor's motion for summary judgment to dismiss the Allens' complaint. *See* Exhibit C of the Allens' Opposition. In addition, Justice Kehoe set a deadline for discovery of February 5, 2003. *Id.* On March 30, 2004, Justice Kehoe signed a Stipulated Order dismissing the Allens' claims for money damages on the merits and with prejudice, allegedly in an effort by the parties to secure a non-jury trial. *See* Affidavit of Warren B. Rosenbaum, Esq.,[1] sworn to June 8, 2005, at ¶ 3.

On October 4, 2004, the Allens filed a proof of claim in this Court in the amount of $50,000, indicating that it was

> exclusively contingent upon the final and binding denial in this case of the creditors' right for the specific performance of debtor's contract for the sale to the Creditors of that real property consisting of 126 acres located at the corner of

---

[1] Mr. Rosenbaum's former firm, Shapiro, Rosenbaum, Liebschutz & Nelson, LLP, represented the Debtor in the State Court action. *See* Rosenbaum Affidavit at ¶ 2.

Hicks Road and Wyckoff Road in the Town of Scipio, New York. Exhibit A attached to Allens' Opposition.

Based on the Stipulated Order of March 30, 2004, issued by the State Court, the Debtor contends that the Allens are not entitled to any claim for money damages and, accordingly their proof of claim should be expunged. The Allens respond that they are entitled to damages in the event that the Court grants the Debtor's motion to reject the contract and determines that they are not entitled to specific performance. The Allens contend that the Stipulated Order is not binding on this Court in that it was entered in a case pending in State Court where the remedy of rejection pursuant to Code § 365, and the entitlement to damages thereunder, does not exist.

## DISCUSSION

Code § 1203 provides that a chapter 12 debtor in possession shall have all the rights and powers of a trustee serving in a chapter 11 case, including operating the debtor's farm. 11 U.S.C. § 1203. Code § 365(d)(2) allows a trustee or a debtor-in-possession in a chapter 12 case to assume or reject an executory contract at any time before confirmation of a plan. In addition, Code § 1222(b)(6) provides that a chapter 12 plan may "subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract under such section. Thus, whether rejection is by means of a motion requiring the Court's approval, or by means of a plan, which requires compliance with Code § 1225 in order to be confirmed, it is still necessary that the Debtor comply with Code § 365. *See generally, In re Alexander*, 670 F.2d 885, 888-89 (9th Cir. 1982). In this case, Code § 365(j) indicates that in the instance where a debtor rejects

a contract for the purchase of real property, the prospective purchaser, who is not in possession of the real property, is entitled to "a lien on the interest of the debtor in such property for the recovery of any portion of the purchase price that such purchaser . . . has paid." 11 U.S.C. § 365(j). In this case, the Allens had been denied possession of the real property by the State Court, except to the extent necessary to harvest their crop of wheat and to permit them access to the equipment stored in the barn on the property. In the opinion of this Court, at the time the Debtor filed his petition in June 2004, the Allens were not "in possession" of Minde Farm within the meaning of Code § 365(j) simply because they had been allowed to harvest the wheat planted on 20 acres of its approximately 143.2 acres in June of 2002.

In rendering its decision, the Court is cognizant of the fact that "the oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions." 20 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE DESKBOOK § 13 (2002). To complicate the matter further, the Court of Appeals for the Second Circuit has made it clear that nothing in Code § 365 authorizes a bankruptcy court to "resolve questions involving the validity of contracts before deciding whether to permit the trustee or debtor-in-possession to assume" or reject a contract. *In re Orion Pictures Corp.*, 4 F.3d 1095, 1099 (2d Cir. 1993). It is in this somewhat confusing context that the Court must make its analysis.

The application of Code § 365 requires that a valid and enforceable contract exist. *In re Owen-Johnson*, 115 B.R. 254, 257 (Bankr. S.D. Cal. 1990). In *Owen-Johnson* the debtor had entered into an option agreement for the purchase of fifteen acres of real property. *Id.* at 255. The prospective purchaser commenced a lawsuit in state court seeking specific performance and

7

alleging breach of contract, intentional misrepresentation, negligent misrepresentation, conversion, rescission and restitution. *Id.* The option agreement had required that the prospective purchaser open an escrow account, which at some point was canceled. The issue before the state court was whether or not there was a contract or whether it had been terminated when the debtor canceled the escrow. *Id.* at 257. The bankruptcy court in *Owens-Johnson* concluded that it would abstain from exercising jurisdiction over the "threshold issue of the existence of a contract in connection with a motion to reject an executory contract" based on judicial economy, including the fact that there was an action pending in the state court and the resolution of the case involved interpretation of state law. *Id.* at 258.

In light of the Second Circuit's decision in *Orion*, which is binding on this Court, this Court is compelled to agree with the analysis of the court in *Owens-Johnson* and will abstain from a determination of the "threshold issue" of whether the May 17th writing constituted an enforceable contract, which may be rejected by this Court. Therefore, the Court will deny the Debtor's motion to reject the "purported contract" without prejudice. The Court will refer that very limited issue to by the State Court to be determined, should the parties choose to go forward with it after having considered the balance of this decision.[2] However, as will be discussed below, in the context of a bankruptcy case, the relief available to a party to a contract for the

---

[2] The fact that Justice Corning granted a preliminary injunction in his 2002 State Court Decision based on his finding that the May 17th writing was not a valid contract apparently was not binding on Justice Kehoe because the grant or denial of a request for a preliminary injunction is not an adjudication on the merits and will not be given res judicata effect. *See Coinmach Corp. v. Fordham Hill Owners Corp.*, 3 A.D.3d 312, 312-313 (N.Y. App. Div. 2004), citing *J.A. Preston Corp. v. Fabrication Enterprises, Inc.*, 68 N.Y.2d 397, 402 (N.Y. 1986). Thus, it would still be necessary for the issue concerning the validity of the May 17th writing to be tried as if no temporary injunction had been granted. *Id.*

purchase of real property that is rejected by a debtor is limited when the party is not in possession of the real property. *See* 11 U.S.C. § 365(j). The remedy of specific performance is not available to the party when there has been no award of specific performance by the state court prepetition. *See In re Nickels Midway Pier, LLC*, 332 B.R 262, 274 (Bankr. D.N.J. 2005); *In re Young*, 214 B.R. 905, 911 (Bankr. D. Idaho 1997). As noted by the court in *Nickels Midway*,

> [i]t is reasonable to infer that Congress did not intend to allow debtors to reject real estate contracts under § 365(a) only to have the purchasers turn around and enforce the Agreement it just rejected. Further, the comprehensive framework Congress set forth in § 365[] to address rejected real estate sale contracts speaks to preemption.

*Nickels Midway*, 332 B.R. at 274.

In *Young* the court was confronted with the issue of whether there was a valid contract between the two parties which was complete and enforceable as to all material terms. *Young*, 214 B.R. at 909. In that case, the prospective purchaser of the real property argued that the execution of a lease with the buyer, as provided for in their agreement, "was ministerial in nature and was not a condition precedent to enforcement of the agreement." *Id.* The court denied the chapter 7 trustee's motion for summary judgment on the issue of the validity of the contract. *Id.* In the context of the motion for summary judgment, the court assumed that there was an enforceable contract and went on to address the rights of the prospective buyer in bankruptcy. After determining that the agreement was an executory contract and was subject to being rejected or assumed by the trustee, the court in *Young* concluded that the prospective purchaser was entitled to a lien on the property for any part of the purchase price that it had paid pursuant to Code § 365(j), as well as a claim for any rejection damages pursuant to Code § 502(g). *Id.* at 911. It further found that even assuming that the prospective purchaser had a valid claim for specific

9

performance of the agreement, under the Bankruptcy Code it was not entitled to specific performance and was restricted to filing a proof of claim entitling it to distribution from the estate, again assuming that the contract was enforceable and it had a valid claim. *Id.* at 913.

Regarding the Debtor's request that the claim of the Allens be expunged, the Court begins its analysis from the perspective that it is the position of the Allens that the May 17th writing constitutes an enforceable contract for the purchase of Minde Farm; otherwise, they would not have been entitled to the remedy of specific performance that they sought in State Court. *See generally, Jacobowitz v. Leak*, 19 A.D.3d 453, 798 N.Y.S.2d 67, 69-70 (N.Y. App. Div. 2005). In this case, the Allens have filed a proof of claim in the amount of $50,000 which they assert is contingent on this Court's finding that they are not entitled to specific performance.

Any claim the Allens might have presupposes a valid contract and an authorization to the Debtor by the Court to reject it. Under state law, the Allens had a right to obtain a money judgment or specific performance if the contract was found to be enforceable. The fact that they may have waived the right to obtain a money judgment by stipulation in the State Court does not prevent them from asserting a statutory contingent claim for damages in the event that the May 17th writing is determined to be a valid contract which is ultimately rejected by the Debtor, whether by motion or in his plan. *See generally, Young*, 214 BR. at 912. Code § 365(g) provides that "the rejection of an executory contract . . . constitutes a breach of such contract . . ." without the need for any determination by the Court as to whether there was an actual breach of any of the terms of the contract by the debtor prepetition.

Assuming, without making any specific finding, that the May 17th writing is a valid contract, under the Bankruptcy Code, the Debtor would be entitled to seek its rejection, and the

10

<u>only</u> relief to which the Allens would be entitled is found in Code § 365(j), namely, a lien on the real property to the extent of any deposit they may have made for the purchase of that property,[3] and a claim for damages pursuant to Code § 502(g). *See Nickels Midway*, 332 B.R. at 276 n.7, citing *Young*, 214 B.R. at 911. Therefore, it is premature to grant the Debtor's motion insofar as it seeks to have any claim the Allens might have expunged. In the event that the Allens elect not to dismiss the action pending in the State Court and are allowed to proceed with a determination of the validity of the May 17th writing by the State Court, this Court will consider a motion filed by the Debtor pursuant to Code § 502(c)(1) to estimate any contingent claim the Allens might have for rejection damages so as not to unduly delay the administration of the case and confirmation of a chapter 12 plan by the Debtor.

Based on the foregoing, it is hereby

ORDERED that the Debtor's motion seeking rejection of the "purported contract" of May 17, 2001 is denied without prejudice; it is further

ORDERED that the Court must abstain from a determination of whether or not a valid and enforceable contract for the sale of Minde Farm exists; it is further

ORDERED that the automatic stay pursuant to Code § 362(a) is modified to allow the parties to proceed with the State Court action to the limited extent of determining whether the May 17th writing constitutes a valid and enforceable contract and whether the undertaking provided by the Debtor prepetition should be cancelled; it is further

ORDERED that the Debtor's motion, to the extent that it seeks to expunge the claim filed

---

[3] According to the 2002 State Court decision, in rejecting the offer made by the Allens on or about September 5, 2001, the Debtor returned the deposit check of $5,000 to the Allens.

11

by the Allens in the amount of $50,000 is denied without prejudice; and it is finally

ORDERED that the Allens apprize the Court within thirty days of the date of this Order whether they intend to proceed in State Court or seek dismissal of the action pending there.

Dated at Utica, New York

this 19th day of December 2005

/s/ Stephen D. Gerling
STEPHEN D. GERLING
Chief U. S. Bankruptcy Judge